**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**SARA RODRIGUES**,

          Petitioner,

   - v -                 Civ. No. 9:11-CV-0132
                           (NAM/RFT)

**SABINA KAPLAN**,

          Respondent.

**APPEARANCES:**         **OF COUNSEL:**

**SARA RODRIGUES**
Petitioner, *Pro Se*
08-G-1213
Albion Correctional Facility
3595 State School Road
Albion, NY 14111

**THE HON. ERIC T. SCHNEIDERMAN**  **LISA E. FLEISCHMANN, ESQ**
**New York State Attorney General**    **Assistant Attorney General**
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Petitioner Sara Rodrigues brings this Petition for a *Writ of Habeas Corpus*, pursuant to 28 U.S.C. § 2254, on the grounds that (1) the verdict was against the weight of the evidence; (2) the jury's rejection of Petitioner's duress defense was against the weight of the evidence; (3) the evidence was legally insufficient to establish Petitioner's accomplice liability; (4) the sentencing judge acted vindictively by giving Petitioner an increased sentence for exercising her right to proceed to trial; (5) the evidence was legally insufficient to establish Petitioner's accessorial liability for the

crimes of her co-defendants; and (6) several of her convictions should be dismissed as lesser included concurrent offenses. *See generally* Dkt. No. 1, Pet. Respondent opposes the Petition on the grounds that Petitioner's claims are unexhausted, incognizable, and/or meritless. *See generally* Dkt. No. 9, Resp't's Mem. of Law. For the reasons that follow, we recommend that the Petition be **DENIED** and no certificate of appealability be issued.

## I. BACKGROUND

The following evidence was adduced at Petitioner's jury trial between October 15 and 20, 2008. Petitioner's co-conspirators, Kristopher Brown and Tyrell Frater, testified that Brown met Petitioner in December of 2007, during a drug deal at her boyfriend's house. Petitioner suggested to Brown that they could rob her drug supplier, Travys Vulgamore. She told Brown that Vulgamore was "flashy" with his money and "dumb." Dkt. Nos. 10-6 through 10-10, Trial Tr.,[1] dated October 15–20, 2008, at pp. 324–33 & 520–21. Later, Brown recruited two friends, Tyrell Frater and Lorenzo Best, to assist in the robbery. *Id.* at pp. 334–35, 338–41, & 519–21. On January 3, 2007, Petitioner, Brown, Frater, and Best drove to Vulgamore's apartment building to see what the building looked like; once there, Petitioner explained where Vulgamore's apartment was located within the building. *Id.* at pp. 341–45 & 521–26. The group then drove back to Petitioner's boyfriend's apartment, and while sitting in Best's car, began planning the robbery. *Id.* at pp. 345–49 & 526–28. Petitioner recommended that they commit the robbery on January 5th, her birthday. *Id.* at pp. 349–50, 400–01, & 530–31.

On the evening of January 5, 2008, Petitioner, Brown, Frater, and Best met at Petitioner's

---

[1] Respondent separated the Trial Transcript into five separate Volumes. *See* Dkt. Nos. 10-6 through 10-10. However, because the volumes are sequentially paginated we omit the Volume numbers and refer only to the page numbers of the Transcript.

boyfriend's apartment. *Id.* at pp. 353–54 & 534–39. Thereafter, Petitioner called Vulgamore and received permission to come over to his apartment. *Id.* at pp. 360. Brown, Frater, and Best dropped Petitioner off across the street from Vulgamore's apartment, and then waited for Petitioner to give them the all clear. Sometime thereafter, Petitioner sent a text message to Brown informing him that there was weed and cocaine in the apartment and that it was ok for them to come to the apartment. *Id.* at pp. 364–68 & 546–48. Thereafter, Frater and Brown entered the apartment, held the occupants at gunpoint while they taped their hands with duct tape, pistol whipped one of the occupants, and stole cell phones, wallets, bongs, about $100 in cash, and a small amount of marijuana. They then fled from the apartment, pretending to kidnap Petitioner. *Id.* at pp. 368–82 & 548–60. Thereafter, all four went back to Petitioner's boyfriend's house and divvied up the property and money they stole, leaving some of the property with Petitioner. *Id.* at pp. 383, 391–394 & 559–60.[2]

Another witness for the prosecution, Detective James McNitt, testified that when he later confronted Petitioner about her involvement in the robbery, she gave him a false name and birthday, as well as false contact information for her parents. *Id.* at pp. 771–76.

On October 20, 2008, Petitioner was convicted of thirty-four (34) counts, including:

- four counts of first degree robbery (N.Y. PENAL L. (hereinafter "PL") § 160.15(3));
- six counts of second degree robbery (PL §§ 160.10(1) & (2)(a));
- three counts of first degree burglary (PL §§ 140.30(2) & (3));
- one count of second degree burglary (PL § 140.25(1)(d));
- two counts of second degree assault (PL § 120.05(6));
- one count of fourth degree conspiracy (PL § 105.10(1));
- three counts of fourth degree grand larceny (PL § 155.30(4));
- three counts of fourth degree possession of stolen property (PL § 165.45(2));
- four counts of petit larceny (PL § 155.25);

---

[2] Contrariwise, Petitioner testified that she was not a willing participant in the burglary, but rather was forced to participate in the crime by her co-defendants who told her that they would harm her and her family if she refused. Trial Tr. at pp. 872–77; *see also* Pet. at p. 5.

- four counts of fifth degree criminal possession of stolen property (PL § 165.40);
- two counts of second degree unlawful imprisonment (PL § 135.05); and
- one count of second degree making an apparently false statement (PL § 210.35).

Trial Tr. at pp. 1139–43; Dkt. No. 10, State Ct. Rs.[3] (hereinafter "R."), Ex. B, Notice of Appeal, dated Dec. 19, 2008.

Subsequently, on November 24, 2008, Petitioner was sentenced to concurrent prison sentences of: (1) eight years, plus five-years post-release supervision, for the first and second degree robbery and second and third degree burglary counts; (2) six years, plus three-years post-release supervision, for the second degree assault count; (3) from one and one-third to four years for each of the fourth degree conspiracy, grand larceny, and possession of stolen property counts; and (4) one year for the petit larceny, fifth degree possession of stolen property, unlawful imprisonment, and making a false sworn statement counts. Dkt. No. 10-10,[4] Sentencing Hr'g Tr. (hereinafter "S. Tr."), dated Nov. 24, 2008, at pp. 12–15.

On November 30, 2009, Petitioner filed a direct appeal challenging her county court conviction. R., Ex. A, Pet'r's App. Br. Petitioner sought direct appeal on the grounds that: (1) the verdict was against the weight of the evidence; (2) the jury's rejection of Petitioner's duress defense was against the weight of the evidence; (3) the evidence corroborating the testimony of Petitioner's co-conspirators was legally insufficient to establish accessorial liability; (4) Petitioner was punished for exercising her right to go to trial; (5) Petitioner's sentence was harsh and excessive; (6) the evidence supporting Petitioner's accomplice liability was legally insufficient; and (7) several counts of the indictment should be dismissed as lesser included counts of greater offenses. *Id.* at p. vi. On June 11, 2010, the New York State Appellate Division, Fourth Department, modified Petitioner's

---

[3] Respondent electronically filed Petitioner's State Court Records as Docket Numbers 10 through 10-6.

[4] The Sentencing Hearing Transcript was filed by Respondent with Volume 5 of the Trial Transcript.

conviction, dismissing two second degree assault and four petit larceny counts as lesser conclusory concurrent counts, and one of the two counts of first degree burglary because only one entry was made into the dwelling, but otherwise affirmed the conviction. *People v. Rodrigues*, 74 A.D.3d 1818, 1819–20 (N.Y. App. Div. 4th Dep't 2010).

On June 30, 2010, Petitioner sought leave to appeal the Appellate Division's decision to the New York State Court of Appeals. In pertinent part, Petitioner argued in her request for appeal that (1) the evidence establishing her accessorial liability for the crimes of her co-defendants was legally insufficient, (2) the evidence submitted was insufficient to corroborate the testimony of her accomplices, and (3) the sentencing judge acted vindictively by giving her an increased sentence for rejecting the plea agreement and exercising her right to proceed to trial. R. at Ex. E, Lt.-Mot., dated June 30, 2010, at pp. 1–4. Leave to appeal was denied by the Court of Appeals on August 31, 2010. *People v. Rodrigues*, 15 N.Y.3d 809 (N.Y. Ct. App. 2010).

## II. DISCUSSION

### A. Exhaustion

Respondent concedes that Petitioner exhausted her claims that (1) the evidence was legally insufficient to establish her accessorial liability, (2) the testimony of her accomplices was not sufficiently corroborated by evidence other than the testimony of her co-defendants, and (3) that she was punished for exercising her right to proceed to trial; however, Respondent maintains that Petitioner failed to exhaust her remaining claims. Resp't's Mem. of Law at p. 16. We agree.

A state prisoner must normally exhaust available state judicial remedies before a federal court will entertain her petition for *habeas corpus*. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement with respect to a claim, a petitioner must "present the substance

of the same federal constitutional claim[s]" to the state courts that are being presented in the federal court. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (internal quotation marks omitted). "A federal constitutional claim has not been fairly presented to the State courts unless the petitioner has informed those courts of 'all the essential factual allegations' and 'essentially the same legal doctrine he asserts in his federal petition.'" *Strogov v. Att'y Gen. of the State of New York*, 191 F.3d 188, 191 (2d Cir. 1999) (citing *Daye v. Att'y Gen. of the State of New York*, 696 F.2d 186, 191–92 (2d Cir. 1982) (& *Picard v. Connor*, 404 U.S. 270, 276-277 (1971)). Additionally, "[s]tate remedies are [not] deemed exhausted [until] a petitioner has . . . presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts)." *Ramirez v. Att'y Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001) (citing *Picard v. Connor*, 404 U.S. at 276–77 & *Daye v. Att'y Gen. of the State of New York*, 696 F.2d at 191–92).

Here, Petitioner failed to present her weight of the evidence, harsh and excessive sentence, and lessor inclusory concurrent count claims in her request for leave to appeal to the Court of Appeals. *See* Pet'r's App. Br. Therefore, Petitioner did not properly exhaust these claims because she failed to present them to the State's highest court. *See Ramirez v. Att'y Gen. of State of New York*, 280 F.3d at 94. Moreover, Petitioner is now procedurally barred from re-raising these claims in state court because she has already availed herself of her one, and only, opportunity to seek leave to appeal to the Court of Appeals. *See Aparicio v. Artuz*, 269 F.3d at 91 (finding that a petitioner is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals . . . [and] New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal.") (citing N.Y. CRIM. PROC. L. (hereinafter "CPL") §§ 450.10(1) & 440.10(2)(c), & N.Y. CT. R. § 500.10(a)). When, as here, "it is

clear that the unexhausted claim is procedurally barred by state law and . . . its presentation in the state forum would be futile[,]" *Aparicio v. Artuz*, 269 F.3d at 90, a district court may deem such claim exhausted but also procedurally defaulted, *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994).

In order for this Court to reach the merits of Petitioner's exhausted but procedurally defaulted claims, she must demonstrate "cause for the default and actual prejudice," or that a "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Id.* at 753; *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999). Examples of external factors include "interference by official," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Bossett v. Walker*, 41 F.3d at 829 (citing *Murray*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1993).

Petitioner does not address the issue of exhaustion in her Petition, nor has she filed a traverse. Consequently, she has failed to demonstrate either cause or prejudice warranting a reprieve of her procedural default, or that our failure to reach the merits of these claims would result in a fundamental miscarriage of justice. Therefore, we recommend that the Petition be **DENIED** as to the weight of the evidence, harsh and excessive sentence,[5] and lesser included concurrent count claims.

---

[5] In any event, Petitioner's weight of the evidence claim is not cognizable on *habeas* review. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues.") (citations omitted.)

Likewise, Petitioner's sentence was well within the guideline ranges for the crimes for which she was convicted; indeed, the maximum exposure on her conviction for first degree robbery, a class B felony and the most severe of her crimes, was as high as twenty-five years. *See* PL §§ 70.00 & 160.15(3). Yet, Petitioner was only sentenced to a term
(continued...)

**B. Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may

---

[5](...continued)
of eight years; therefore, her harsh and excessive sentence claim would not have been cognizable on *habeas* review either. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.").

grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### C. Vindictive Sentencing Claim

Petitioner avers that the eight-year sentence imposed by the county court evinces the vindictiveness of the court because it was twice as long as the sentences imposed on Petitioner's co-defendants and the sentence offered to her pursuant to a pre-trial plea offer. Dkt. No. 1, Pet'r's Mem. of Law, at pp. 20–21.[6] Specifically, she claims that "this is not a case where . . . the Court punished her for asserting her right to trial by imposing a harsher sentence than she would have received had she pleaded guilty. . . . [Rather, Petitioner] was essentially threatened by the Court into taking a plea, [and] thereafter retaliated against . . . [for choosing] to exercise her right to trial." *Id.* at p. 21. Petitioner raised the vindictiveness issue on direct appeal, and the New York State Appellate Division, Fourth Department, concluded that "[t]he record belie[d] the contention of [Petitioner] that she was penalized for exercising her right to trial." *See People v. Rodrigues*, 74 A.D.3d at 1820 (citing *People v Pena*, 50 NY2d 400, 411-412 (N.Y. Ct. App. 1980)).

Under the Sixth Amendment to the Constitution, criminal defendants are guaranteed the right to a trial by jury, "and a state may not penalize a person for exercising a right guaranteed under the Constitution. . . . At the same time, the Supreme Court has 'squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.'" *Russ v. Greene*, 2009 WL

---

[6] Attached to the Petition is the appellate brief submitted to the Appellate Division by Petitioner's trial attorney. Because it is attached to the Petition, we construe it as a Memorandum of Law in support of the Petition.

2958007, at *11 (W.D.N.Y. Sept. 11, 2009) (citing, *inter alia*, *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969) and quoting *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978)). Nonetheless, and notwithstanding a state's right to encourage a guilty plea, "[a] sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal." *Izaguirre v. Lee*, 856 F. Supp. 2d 551, 572 (E.D.N.Y. 2012) (citing *Wasman v. United States,* 468 U.S. 559, 567–68 (1984)). Such vindictiveness clearly violates the due process clause of the Fourteenth Amendment. *See U. S. v. Goodwin*, 457 U.S. 368, 372 (1982) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). However, "the Due Process Clause is not offended by all possibilities of increased punishment.'" *Id.* at 384 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)).

In *North Carolina v. Pearce,* and its progeny, the Supreme Court established a framework for evaluating whether a particular sentence was the result of unconstitutional vindictiveness or merely a "legitimate response to criminal conduct." *See Alabama v. Smith*, 490 U.S. 794, 799-800 (1989) (quoting *United States v. Goodwin*, 457 U.S. at 373); *see also Izaguirre v. Lee*, 856 F. Supp. 2d at 573 (citing cases for the proposition that the *Pearce* standard is clearly established Supreme Court precedent for purposes of federal *habeas* review of vindictive sentencing claims). In certain cases, when a greater sentence is imposed after a defendant chooses to exercises a constitutionally protected right, courts will presume that the increased punishment was imposed for a vindictive purpose, and that presumption must then be rebutted by objective information justifying the increased sentence. *See Alabama v. Smith*, 490 U.S. at 799 (citing *North Carolina v. Pearce,* 395 U.S. at 726 & *Texas v. McCullough,* 475 U.S. 134, 142 (1986)). However, the presumption does not apply in all cases, only in those cases where "there is a 'reasonable likelihood,' . . . that the increase in sentence

is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Alabama v. Smith*, 490 U.S. at 799-800 (quoting *United States v. Goodwin*, 457 U.S. at 373, and citing *Wasman v. United States,* 468 U.S. at 569). Thus, we must first ask whether the presumption applies. *See Izaguirre v. Lee*, 856 F. Supp. 2d at 574.

At least one court has held that the that the *Pearce* presumption of vindictiveness applied in circumstances similar to those framed by Petitioner in the instant case. In *Izaguirre v. Lee*, a petitioner claimed that he had been punished for exercising his right to proceed to trial rather than accept a plea agreement. The district court found that a reasonable likelihood of actual vindictiveness existed because:

> before the trial even began, the County Court plainly told Petitioner the sentence he would receive—namely, the non-mandatory, statutory maximum—if he were convicted at trial. Before being presented with any of the state's evidence, hearing any of Petitioner's defense, or reviewing a pre-sentence report regarding Petitioner, the County Court explicitly stated to Petitioner, "Mr. Izaguirre, do you understand that if you are found guilty after this trial you will do 25 years in prison?" . . . Following the jury rendering a guilty verdict, the County Court did, in fact, sentence Petitioner to 25 years' imprisonment. Although it is possible that no actual vindictiveness existed on the part of the County Court during the sentencing process, the pre-trial announcement that Petitioner would receive the statutory maximum sentence followed by the post-trial issuance of the promised statutory maximum sentence (which was discretionary, rather than mandatory) certainly raises a reasonable likelihood of actual vindictiveness.

*Izaguirre v. Lee*, 856 F. Supp. 2d at 574.

Here however, the sentencing court judge did not plainly tell Petitioner what sentence she would receive. Rather, during a pre-trial conference, the county court judge explained to Petitioner that she faced conviction of a more serious crime if found guilty than that for which she would be convicted if she accepted a plea of guilty, and that consequently she faced a greater penalty if she

chose to go to trial. *See* R., Ex. E., Pet'r's App. for Leave to Appeal, dated June 30, 2010, at Ex. E, Conference Tr., undated (hereinafter "Pre-trial Conference"). The court also informed Petitioner that in fashioning sentences, defendants that accept responsibility for their actions receive consideration for their admission, while those defendants that deny wrongdoing and are subsequently tried and convicted receive sentences that "are very, very different than the sentences of those individuals who do step up and admit their responsibility." *Id.* at pp. 5–6. Such statements have repeatedly been found to be a permissible and necessary component of the plea bargain process, and are not indicative of vindictiveness. Indeed, according to the Supreme Court:

> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible— "attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin v. Stynchcombe,* [412 U.S. 17, 31 (1973)].

*Bordenkircher v. Hayes*, 434 U.S. at 364 (first alteration in original); *see also Corbitt v New Jersey,* 439 U.S. at 218-220 (noting that "[w]e have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea[,]" including a lesser penalty than that which may be received after a conviction at trial).

In further contrast to the sentence imposed in *Izaguirre*, here, the sentencing court gave no indication that it had pre-determined Petitioner's sentence. Prior to pronouncing sentence, the sentencing court judge explained that:

> We have had the benefit of a presentence investigation and a report that the Probation Department prepared for us, and I have read that report in total . . . We have also had the benefit of a . . . lengthy presentence conference[.] . . . The defendant stands convicted of several B violent felonies and other felonies and misdemeanors in connection with this violent crime. This defendant is the one person who identified the targets of this violent crime. This defendant is the one who initiated the planning of these crimes and was an integral participant in the execution of this violence upon the young victims in this matter. . . . This defendant stands before the Court a very cunning, manipulative, arrogant, deviant, violent, dangerous and antisocial personality. She remains a serious and continuing threat to the safety and security of our community. Many of those traits . . . were very clear to this Court through her

*-12-*

> demeanor and the way she testified on the stand in this particular trial. The defendant has a history, a long history of antisocial and assaultive behavior as a juvenile. She continues to refuse to accept responsibility for these violent crimes.

Sentencing Hr'g Tr. at pp. 10–12.

The court's statements demonstrate that Petitioner's sentence properly reflected relevant factors which were revealed to the court at or after trial, such as details of the crime, the evidence adduced at trial, Petitioner's defenses, and the characteristics of the Petitioner. Thus, it cannot be argued that the difference between the sentence Petitioner received, the sentence she was offered during plea negotiations, and those received by her co-defendants was "more likely than not attributable to the vindictiveness [of] the sentencing judge." *Alabama v. Smith*, 490 U.S. at 801. Accordingly, as it is not reasonably likely that the sentence imposed was the result of actual vindictiveness, no presumption of vindictiveness should apply in the instant case.

Therefore, in order to prevail, Petitioner must establish actual vindictiveness. However, there is no evidence of actual vindictiveness in the record before us. The sentencing court judge neither stated nor implied that the increased sentence was a result of Petitioner's failure to accept the plea bargain. *See Archie v. Strack*, 378 F. Supp. 2d 195, 200 (W.D.N.Y. 2005) (citing *Naranjo v. Filion,* 2003 WL 1900867, at *10 (S.D.N.Y. Apr. 16, 2003) for the proposition that "the difference between the offered sentence (four and one-half to nine years) and the imposed sentence (ten to twenty years) does not make out a claim of actual vindictiveness because the judge never stated or implied that the sentence was based on [the defendant's] refusal of the plea offer."); *see also Brown v. Donnelly*, 371 F. Supp. 2d 332, 342 (W.D.N.Y. 2005) (same). Likewise, the fact that the sentence she received after trial was longer than the sentence offered during plea negotiations does not "indicate that a petitioner has been punished for exercising [her] right to proceed to trial." *Walker v. Walker*, 259 F. Supp. 2d

221, 226 (E.D.N.Y. 2003) (citing *United States v. Araujo,* 539 F.2d 287, 292 (2d Cir. 1976)); *see also Echevarria-Perez v. Burge*, 779 F. Supp. 2d 326, 338 (W.D.N.Y. 2011) (citing cases for the same proposition).

Accordingly, the Fourth Department's denial of Petitioner's vindictive sentencing claim was neither contrary to nor an unreasonable application of, clearly established Federal law, nor a decision that was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2244(d).

Therefore, we recommend that the Petition be **DENIED** as to this claim.

### D. Accomplice Testimony & Sufficiency of the Evidence

Petitioner claims that (1) the testimony of her accomplices was not corroborated by sufficient evidence, and (2) the evidence was legally insufficient to establish her accessorial liability for the crimes of her co-defendants. Pet. at pp. 6–6(b). The Fourth Department "reject[ed] the contention . . . that the evidence is legally insufficient to establish her accessorial liability . . . . [and] conclude[d] that the testimony of her accomplices was sufficiently corroborated." *People v. Rodrigues*, 74 A.D.3d at 1819–20. As explained below, these rulings by the Fourth Department were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

#### *1. Accomplice Testimony*

Petitioner does not deny that her co-defendants forced their way into Vulgamore's apartment brandishing weapons, that non-participants were pistol-whipped and injured, or that cash and property were stolen from Vulgamore's home. In other words, Petitioner all but concedes that the crimes for which she was found liable as an accessory were committed. The crux of her argument is that the testimony of her co-conspirators – which was the basis for her conviction as an accessory – was

legally insufficient to support her conviction because it was not sufficiently corroborated by any independent evidence other than the testimony of her co-defendants. However, while accomplice testimony must be corroborated under New York law, "[t]he Due Process clause of the United States Constitution, . . . includes no such corroboration requirement." *Roberts v. Smith*, 2010 WL 5288198, at \*1 (citing, *inter alia*, N.Y. CRIM. PROC. L. § 60.22(1), & *Caminetti v. United States*, 242 U.S. 470, 495 (1917); *see also Crespo v. Fischer*, 2006 WL 3486805, at \*5 (S.D.N.Y. Nov. 27, 2006); *Estrada v. Senkowski*, 1999 WL 1051107, at \*18 (S.D.N.Y. Nov. 19, 1999) (citing cases). Consequently, Petitioner's argument presents an issue based purely on state law, and is therefore, incognizable on federal *habeas* review. *Estrada v. Senkowski*, 1999 WL 1051107 at \*18; *see also Besser v. Walsh*, 2003 WL 22093477, at \*22–24 (S.D.N.Y. Sept. 10, 2003) (citing, *inter alia*, *Estrada v. Senkowski*); *cf. United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993) (citing cases for the proposition that the "lack of corroboration goes to the weight of the evidence, not to its sufficiency, and a challenge to the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal").

Therefore, we recommend that the Petition be **DENIED** as to this claim.

### 2. *Sufficiency of the Evidence*

When determining whether a conviction was based on sufficient evidence, the relevant inquiry is whether, when looked at in the light most favorable to the prosecution, a rational juror could conclude beyond a reasonable doubt from the testimony of her co-defendants that Petitioner was liable as an accessory. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Gordon*, 987 F.2d at 906 (citing *United States v. Parker,* 903 F.2d 91, 97 (2d Cir. 1990) for the proposition that "[a] conviction may be sustained on the basis of the testimony of a single accomplice,

so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt"). A petitioner challenging the evidentiary sufficiency of his state criminal conviction "bears a very heavy burden." *Einaugler v. Supreme Ct. of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). A reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman,* 870 F.2d 65, 71 (2d Cir. 1989), nor make its own "assessments of the weight of the evidence[,]" *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir. 1996).

Under New York law, a person is liable as an accessory "when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." PL § 20.00. At trial, Petitioner's co-defendants testified that (1) Petitioner put forth the proposal to the co-defendants that they should rob Travys Vulgamore because he was "flashy" with his money and kept drugs at his house, Trial Tr. at pp. 329–31, 400, & 521; (2) Petitioner took the co-defendants to Vulgamore's apartment building prior to the robbery in order to gather information about the building, and disclosed the location of his apartment within the building to them, *id.* at pp. 341–45 & 521–26; (3) Petitioner participated in discussions about how to carry out the robbery, *id.* at pp. 347–49 & 526–29; (4) Petitioner suggested that the men conduct the robbery on her birthday, which would give her an excuse to visit Vulgamore's house, *id.* at pp. 349–50, 400–01, & 530–31; (5) on the day of the robbery Petitioner and her co-defendants met at Petitioner's boyfriend's house, where Petitioner called Vulgamore and arranged a visit, then Petitioner and her co-defendants went to Vulgamore's apartment together, *id.* at pp. 359–60, 538–39, 543, 545, & 563–65; (6) prior to the actual robbery, Petitioner was made aware of the fact that her co-defendants intended to use firearms during the robbery, *id.* at pp. 441–43

& 543-45; (7) nonetheless, Petitioner entered Vulgamore's apartment alone under the pretext of partying with the victim for her birthday, and once she was inside she sent a text message to her co-defendants providing them with information about the number of people and the types of drugs that were inside, and telling them to come up to the apartment, *id.* at pp. 364–68, 400–01, & 546–48; (8) it was Petitioner's idea that the co-defendants should pretend to kidnap her from Vulgamore's apartment, *id.* at pp. 358, 535–36 & 542; and (9) after the robbery the participants went back to Petitioner's boyfriend's house and divvied up the property and money they stole, leaving some of the property with Petitioner, *id.* at pp. 391–394 & 559–60. Prosecutors also called a Verizon Wireless employee as a witness at trial who confirmed that Petitioner made phone calls to Vulgamore and made phone calls and sent text messages to co-defendant Kris Brown at relevant times on the night of the robbery. *Id.* at pp. 834–48.

Such evidence is more than sufficient to establish both elements of accessorial liability, and neither the alleged discrepancies in her co-conspirators' stories, nor Petitioner's averments that she was an unwilling participant in the crime affect our conclusion. *See* Pet'r's App. Br. at pp. 14–18. "Here, as in many cases, the jury's decision was largely a matter of choosing whether to believe [petitioner's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence . . . . We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence." *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981). We are simply not at liberty to undermine the credibility determinations made by the jury at trial. *United States v. Roman,* 870 F.2d at 71; *see also Maldonado v. Scully,* 86 F.3d at 35. Lastly, Petitioner's argument that the lack of physical evidence connecting Petitioner to the crime proves that the evidence was insufficient is similarly unavailing.

*See* Pet'r's App. Br. at pp. 14–18; *see also Roldan v. Artuz*, 78 F. Supp. 2d 260, 268 (S.D.N.Y. 2000) (collecting cases for the proposition that a conviction may be entirely supported by circumstantial evidence).

Based upon the foregoing, it cannot be concluded that the Appellate Division's rejection of this claim was contrary to, or an unreasonable application of, the Supreme Court's ruling in *Jackson v. Virginia*. Therefore, we recommend that the Petition be **DENIED** as to this ground.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should be issued with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   April 16, 2014
         Albany, New York

Randolph F. Treece
U.S. Magistrate Judge